IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JANE FISHER, as Personal Representative of, and Administrator of the Estate of, THEODORE DELUCIA, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. _____ |
| HONDA MOTOR COMPANY, LTD., AMERICAN HONDA MOTOR COMPANY, INC., HONDA CANADA, INC., and HONDA OF CANADA MANUFACTURING, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Jane Fisher, by and through her attorney, and files her Complaint for Damages against Defendants Honda Motor Company, Ltd., American Honda Motor Company, Inc., Honda Canada, Inc., and Honda of Canada Manufacturing, showing this Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Jane Fisher ("Plaintiff" or "Fisher") is a resident of, a citizen of, and is domiciled in Fayette County, Georgia. Mrs. Fisher is the Administrator of the

Estate of Theodore DeLucia.

2.

Defendant Honda Motor Company, Ltd. ("Honda Motor") is a Japanese limited company with its principal place of business located at 2-1-1, Minami-Aoyama Minato-Ku, 107-8556, Japan. Defendant Honda Motor may be served pursuant to the Hague Service Convention and, when such service is accomplished, Defendant Honda Motor will be subject to the jurisdiction and venue of this Court. Defendant Honda Motor has been properly served in this matter.

3.

Defendant American Honda Motor Company, Inc. ("American Honda") is a California corporation that is registered to do business in the State of Georgia, and has its principal place of business located at 1919 Torrance Blvd., Torrance, CA, 90501. Defendant American Honda's registered agent for service of process is Paul Scott, 5 Glynn Avenue, Brunswick, GA, 31520. When said agent is served with copies of the Summons and Complaint in this matter, Defendant American Honda will be subject to the jurisdiction and venue of this Court. Defendant American Honda has been properly served in this matter.

4.

Defendant Honda Canada, Inc. ("Honda Canada") is a Canadian corporation with its principal place of business located at 180 Honda Blvd, Markham, ON L6C 0H9, Canada. Defendant Honda Canada may be served pursuant to the Hague Service Convention and, when such service is accomplished, Defendant Honda Canada will be subject to the jurisdiction and venue of this Court. Defendant Honda Canada has been properly served in this matter.

5.

Defendant Honda of Canada Manufacturing ("Honda Canada Manufacturing") is a Canadian corporation with its principal place of business located at 4700 Industrial Pkwy, Alliston, ON L9R 1A2, Canada. Defendant Honda Canada Manufacturing may be served pursuant to the Hague Service Convention and, when such service is accomplished, Defendant Honda Canada Manufacturing will be subject to the jurisdiction and venue of this Court. Defendant Honda Canada Manufacturing has been properly served in this matter.

**THE PRODUCT**

6.

The defective vehicle at issue is a Silver 2006 Honda Pilot EXL (VIN 5FNYF28516B026873) (the "Honda Pilot").

## PERSONAL JURISDICTION OF THE HONDA DEFENDANTS

### Generally

7.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because the suit is between citizens of different states, and is a case in which citizens of a foreign state are additional parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8.

Pursuant to 28 U.S.C. §1391, proper venue for this action is the United States District Court for the Northern District of Georgia because a substantial part of the events giving rise to the claim occurred within the Northern District of Georgia.

9.

This Court has general personal jurisdiction over Defendants Honda Motor Company, Ltd., American Honda Motor Company, Inc., Honda Canada, Inc., and Honda of Canada Manufacturing (hereinafter collectively referred to as the "Honda Defendants" or "Honda") because they conduct continuous and systematic business in Georgia.

10.

This Court has specific personal jurisdiction over Honda because Honda purposefully availed itself of the privilege of conducting activities in Georgia, and Plaintiff's damages arise out of or relate to those activities. Honda purposefully placed Honda Pilots into the stream of commerce within Georgia and throughout the United States, and placed Honda Pilots into the stream of commerce with awareness that the product was being marketed in Georgia.

11.

Honda is also subject to specific jurisdiction in this Court because Honda is subject to the Georgia long-arm statute by doing business in Georgia and by contracting with Georgia residents and by performing such contracts in part in Georgia and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Georgia and by recruiting Georgia residents for employment.

**Business Activities**

12.

Defendant American Honda is registered to do business in the state of Georgia, maintains a registered agent for service of process in Georgia, is

authorized to conduct business in Georgia, conducts business in Georgia, and derives significant revenue in the millions of dollars from its activities in Georgia.

13.

Honda is a manufacturer, distributor, importer, and provider of motor vehicles, technical services, sales support, financial services, regulatory liaison services, legal services, product warranty and recall services, and promotional services in support of Honda's strategic plan to increase sales in the United States.

14.

Honda designs, manufactures, services, finances, promotes, exports, provides warranty support, performs recall obligations, and assures compliance with regulatory standards, laws, and regulations for vehicles that are sold to consumers in Georgia and throughout the United States.

**Contacts with Georgia and the United States**

15.

Honda and its U.S. subsidiary, American Honda, recognize that the market for their motor vehicles is global. They acknowledge and calculate that this global market includes the United States and each State in the United States. They are also aware and intend that their product will be used in Georgia and the United States. They are aware and intend that their product will be used extensively in

each State. They are aware that they must design their product to be free of safety hazards and, if that is not possible, to guard or warn against them. They are aware of the potential for injury and that defects in their vehicles can and will result in injuries or even death. Honda promotes and advertises its commitment to safety to potential customers in the United States and each State therein.

16.

Honda has insured risks located in Georgia. Honda has paid millions of dollars in taxes to Georgia. Honda has owned and/or owns substantial property in Georgia. Honda has sued and/or been sued in Georgia state and federal courts for years. Honda has been involved in litigation in Georgia hundreds if not thousands of times where it has not contested personal jurisdiction and where it consented to be sued.

17.

Employees, officers and/or directors of Honda have visited, lived, conducted business, and/or worked in Georgia. There has never been a time in the past 20 years where Honda did not sell, distribute, or market its vehicles in Georgia.

18.

Honda has a national dealership network which includes many dealerships in Georgia who market and sell new Honda products, service Honda products, honor

Honda Motor Company warranties, and carry-out necessary vehicle recall work which Honda requires.

19.

A large segment of Honda's gross income for sales, services and repair work is derived from the activities of its dealership network in Georgia.

20.

Honda also monitors its vehicles, such as looking at customer complaints or feedback from distributors and dealers, including many in Georgia.

21.

Honda keeps records of how many vehicles are shipped to each state, and how much revenue is generated from each state, including Georgia.

22.

Honda maintains multiple offices in the State of Georgia.

23.

Honda has subsidiaries and business affiliates in the State of Georgia

24.

Honda has employees and agents in the State of Georgia.

25.

Honda keeps records of the revenue that it derives from the State of Georgia.

26.

Numerous of Honda's corporate representatives, agents, and/or employees have visited the State of Georgia for business purposes on occasions too numerous to list.

27.

Honda has been a party in numerous cases where it has come into courts in Georgia to answer claims about the failure of Honda products in Georgia.

28.

Honda has been a party seeking relief or review in numerous cases where it has purposefully availed itself of the jurisdiction of courts in Georgia by serving as the petitioner, appellant, or removing party in such cases.

29.

Honda has tens of thousands of customers in Georgia.

30.

Honda spends at least hundreds of thousands of dollars per year marketing its products in Georgia.

**Vehicle Financing**

31.

Honda has a wholly owned subsidiary (American Honda Finance Corporation) that Honda exercises control over which makes use of Georgia's court system as a plaintiff against Georgia resident defendants.

32.

Honda's wholly owned subsidiary (American Honda Finance Corporation) is registered to do business in Georgia and has a registered agent for service of legal process in Georgia. Honda owns and operates that subsidiary known as American Honda Finance Corporation.

33.

American Honda Finance Corporation is registered to do business in Georgia, pays taxes in Georgia, provides financing to Honda dealerships and the purchasers of Honda products in Georgia.

**Compliance**

34.

Federal Motor Vehicle Safety Standards (FMVSS's) create safety standards that are applicable to Honda vehicles and apply to vehicles in each and every State. As part of its specific plan to increase global sales with a specific focus on the

United States, Honda attempted to produce vehicles that comply with FMVSS's.

This includes a requirement to deploy airbags when a deployable event occurs and

a sufficiently heavy person is sitting in the front passenger seat. Honda's election

to produce vehicles for the United States market resulted in the inclusion of the

defective occupant classification system that caused the injury in this case in

Georgia.

**Warranty Services, Recalls, and Investigations**

35.

Honda makes all final decisions on recalling defective vehicles in the United

States, including Georgia, and had specifically appointed Honda as its agent for

communicating recalls and Tread Act decisions to the United States regulatory

bodies.

36.

Honda through its agent Honda recalled vehicles located in Georgia. Further,

its agent sent letters and information to customers located in Georgia regarding

defects in Honda vehicles.

37.

Honda sends technical service bulleting regarding work procedures related

to the subject vehicle into Georgia.

38.

American Honda acts as the agent of Honda for purposes of performing warranty service, repair and replacement obligations and its reimbursement for these services is provided for in their agreements.

39.

Honda directs Georgia customers to approved Honda service centers to have recall work performed on the subject model vehicle initially sold into various states but located in Georgia.

40.

American Honda and Honda entered into various agreements, such as insurance agreements, agreements to cooperate in investigation of defect incidents and claims, agreements to cooperate in defect inquiries, and agreements to cooperate in litigation. These agreements are for the purpose of advancing the sale of vehicles throughout the United States.

**Websites**

41.

Honda maintains websites for the purpose of promoting and selling vehicles to customers in the United States, and every State therein, including Georgia.

42.

Honda's website contents are actually owned and copyrighted by Honda. The contents of Honda sales brochures are offered for free either in person or via its website to all United States residents, including Georgia residents, and are owned and copyrighted by Honda.

43.

American Honda and Honda maintain webpages for customers in the United States to search for dealerships nearest to the customer's home. They respond to requests from Georgia by providing the addresses of several dealerships.

44.

American Honda's website also claims Honda's history and heritage as its own, including safety innovations and inventions.

45.

The websites that Honda runs has repeated online contacts with Georgia residents over the internet, and the websites contain interactive elements which allows sharing of information, all of which is designed to get Georgia residents to purchase Honda products.

46.

Honda's copyrighted website homepage has active features such as a link which Georgia consumers can click to access a page where they can exchange information and directly purchase official Honda automotive parts on a webpage that prominently displays the Honda logo and Honda copyright. This Honda webpage solicits Georgia consumers to exchange information about their home address and the year, make, and model of their Honda vehicle to directly purchase official Honda automotive parts tailored to their specific Honda vehicles so they can have those parts shipped to their home address in Georgia.

47.

Honda's copyrighted website homepage has interactive Shopping Tool features such as a Find a Dealer function by which Georgia consumers can exchange information to obtain identification, a phone number, a link to the website, and directions both from inside Georgia or outside Georgia to official Honda dealerships in Georgia. Georgia consumers can exchange information on ford.com to use the Shopping Tool to obtain a Local Quote from a Georgia Honda dealer to purchase a Honda vehicle in Georgia, and Georgia consumers can exchange information on ford.com to search a Georgia Honda dealer's inventory of new Honda vehicles and Honda Certified Pre-Owned vehicles in stock in Georgia.

48.

Honda's copyrighted website homepage has active features such as a Build & Price function by which Georgia consumers can exchange information to configure a Honda exactly how they want to purchase it – from color to options – and obtain an internet purchase price. While consumers are using these active features on ford.com, a website popup window spontaneously opens and Honda solicits that its consultant can answer questions now.

49.

Honda's copyrighted website homepage has active features such as a link which Georgia consumers can click to access a page where they can exchange information to Apply for Credit to purchase or lease a Honda vehicle in Georgia, to Estimate Your Payment to purchase or lease a Honda vehicle in Georgia, or to obtain an estimate of Trade-in Value for a vehicle that a Georgia customer can trade in at a Honda dealership in Georgia.

50.

Honda's copyrighted website has interactive features such as a Certified Pre-Owned page where Georgia consumers can exchange information to purchase used Honda vehicles in Georgia, to obtain Incentives and Offers on the purchase of used Honda vehicles in Georgia, to Search Inventory of Georgia Honda dealerships and

to apply for Credit to purchase such used Honda vehicles in Georgia. This Certification process is conducted by technicians and mechanics with training from Honda, and Honda provides this training in Georgia. In addition to this technical training which occurs in Georgia, Honda also has a driver training program which Honda specifically conducts in Georgia.

51.

Honda's copyrighted website has interactive features such as a Safety Recall page where an active search based on the exchange of information about the specific vehicle at issue in this civil action can be found. Honda delegates legally required safety tasks to its dealerships in Georgia, and interacts with Georgia dealerships about Safety Recalls and Technical Service Bulletins which instruct dealership mechanics how to diagnose and repair problems with Honda vehicles which arise from in-field product use. While Honda sends such information to its Georgia dealerships, Honda also receives information back from its dealerships which participate in Honda's databases for gathering in-field data.

**Advertising**

52.

Advertisements and marketing materials were and are targeted to Georgia residents to entice them to purchase Honda vehicles and Honda services, including the subject model vehicle.

53.

Honda has spent millions upon millions of dollars advertising and marketing in Georgia and directly to Georgia residents for years, whether in the form of television advertisements, magazine advertisements, newspaper advertisements, internet advertisements, or other forms of advertising and/or marketing.

54.

For decades, Honda has made and distributed dozens upon dozens of advertisements or commercials or other marketing materials touting the safety of Honda vehicles and how much Honda cared/cares about safety. Honda did this in all fifty states, including Georgia. Honda did this to entice consumers and ultimate users to (1) purchase Honda vehicles—whether used or new; (2) to drive Honda vehicles—whether used or new; and (3) to ride in Honda vehicles—whether used or new. Honda knew that consumers would rely upon these statements when

deciding whether to purchase a Honda vehicle, whether to drive a Honda vehicle, or whether to ride in a Honda vehicle.

55.

Had Plaintiff not seen such advertisements or commercials or other marketing materials touting the safety of Honda vehicles, and how much Honda cared/cares about safety, Plaintiff would not have been in the subject vehicle on the date of the accident.

## Intellectual Property

56.

Honda controls the use of its trademark through its entities, which are directed to allow Honda to use its trademark. This includes use of trademarks by United States dealers and in promotions and advertising for its product.

57.

Honda holds patents and trademarks which it demands must be honored in Georgia.

## Sales Locations

58.

Honda reserves the right to approve all United States dealerships. It sets policy for interaction of its United States dealerships with Honda and its

subdivisions, including Honda. Honda exercises direct control of dealership showroom tactics and displays through Honda.

59.

American Honda and Honda allocated to existing dealerships the right to promote and advertise Honda vehicles to Georgia residents and in Georgia media.

60.

Honda exercises direct control of dealership showroom tactics and displays. It also requires that its suppliers, its subdivisions and dealerships comply with environmental, labor and safety laws of the United States and its constituent states, including Georgia.

61.

Honda has a regular plan for the distribution of its new and used products within Georgia with the goal of achieving a commercial benefit from the sale of those products in Georgia.

62.

Honda places its products into the stream of commerce by targeting Georgia through dozens of approved Honda dealerships in dozens of cities and towns in Georgia.

63.

Honda has contracts with its Honda dealerships in Georgia where Honda contractually promises to come into courts in Georgia to defend claims about the failure of Honda product that injure Georgia residents.

64.

Honda requires its Georgia dealerships to advertise within Georgia, and Honda shares in the cost of these Georgia advertisements for Honda products.

65.

Honda jointly participates in the interactive websites of the Honda dealerships located within Georgia.

66.

Honda certifies mechanics who work at the Honda dealerships in Georgia.

67.

Honda provides certification training for mechanics who work at the Honda dealerships at multiple locations in Georgia.

**Hardship**

68.

Maintaining jurisdiction over Honda does not work a constitutionally prohibited hardship or a denial of Due Process.

69.

The presence of Honda vehicles in each of the United States, including

Georgia, is not the result of isolated incidents, but rather is the intended result of

Honda's global market strategy. Honda is part of the universally recognized global

economy and they benefit from its participation in the global market.

70.

Honda is not a small family-run business that would suffer hardship if

required to answer for defective products in States in which they know and intend

for their products to be used. On the contrary, they are sophisticated, technically

advanced, well financed, legally proficient and enthusiastic participants in the

global economy with a specific policy of increasing United States sales, without

limit to any particular State. They have a well-established presence in the United

States including regional offices, local headquarters, retained lobbyists, in-house

attorneys in the United States, retained lawyers in the United States, dealerships, an

in-house advertising team, retained advertising firms, dealership sales training

programs, dealership service department training programs, dealership technical

support personnel, and recall and warranty service personnel. They are required to

interpret and comply with complex United States laws and legal standards for

importation, distribution, safety and technical certification, environmental laws,

franchise laws, labor laws, data recording laws, warranty laws and defect reporting laws and recall regulations. By information and belief, they have insurance for injury litigation. All of these attributes are a nonexclusive list of reasons Honda would be under no disadvantage if required to defend the defective performance of the vehicles in places where it intends for them to be used. They are under no disadvantage due to any illusory language, financial or legal differences. In fact, Honda has intervened in litigation in the United States on its own volition.

71.

There is little or no burden on Honda litigating this case in this Georgia Court. In contrast, it would be a tremendous burden and great inefficiency and unnecessary delay imposed on the Plaintiff to litigate this case in another forum because Georgia has an interest in overseeing this litigation which involves injuries to Georgia residents and defective products used in Georgia.

72.

Georgia has a legitimate and high priority interest in protecting its citizens and other United States travelers from injuries caused by defects in vehicles using its roads and highways, and this is especially so when the defects effect the performance of safety devices.

73.

The efficient resolution of this civil action can only go forward in this

Georgia, and public policy favors resolution of this dispute in this Georgia Court.

## **THE INCIDENT**

74.

On July 30, 2018, Jane Fisher was driving her 2006 Honda Pilot southbound

on Highway 85 Connector near Railroad Avenue in Fayette County, Georgia. Her

father Theodore DeLucia was seated in the front passenger seat. Both she and her

father were properly wearing their lap/shoulder belts.

75.

Mrs. Fisher fell asleep and struck a railroad crossing pole.

76.

As a result of the collision, the driver's front airbag deployed and Mrs.

Fisher survived the collision.

77.

Unfortunately, the passenger's front airbag did not deploy, resulting in the

death of Mrs. Fisher's father, Theodore DeLucia. Mr. DeLucia was 5'6" tall and

weighed 124 lbs. at the time of his death.

## INJURIES, COMPENSATORY DAMAGES, AND DEATH

78.

Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

79.

Mr. DeLucia was conscious during the collision, after the collision, and during the majority of his medical treatment.

80.

As a proximate result of the Incident and the conduct of Defendants as described above, Mr. DeLucia suffered severe and permanent injuries including but not limited to a traumatic cervical spine injury at C5-6 resulting in paraplegia of the lower extremities, and cardiac arrest.

81.

As a proximate result of the Incident and the conduct of Defendants as described above, Mr. DeLucia was forced to endure unimaginable physical and mental pain and suffering during the last hours of his life, a few examples of which are listed below:

(a)     Interference with normal living;

(b)     Interference with enjoyment of life;

(c)     Impairment of bodily health and vigor;

(d)     Fear of extent of injury;

(e)     Shock of impact;

(f)     Actual pain and suffering, past and future;

(g)     Mental anguish, past and future; and

(h)     A limited ability to perform normal activities.

82.

As a proximate result of the Incident and the conduct of Defendants as described above, Mr. DeLucia suffered severe emotional trauma and mental anguish.

83.

As a proximate result of the Incident and the conduct of Defendants as described above, Mr. DeLucia incurred $98,762.27 in medical bills before his untimely death.

84.

As a proximate result of the Incident and the conduct of Defendants as described above, and the severe and irreversible injuries described above, Mr. DeLucia passed away on July 31, 2018, depriving him of a life he greatly valued, and depriving him of a loving relationship with his daughter.

## COUNT I – NEGLIGENCE
## (ALL DEFENDANTS)

85.

Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

86.

At all times relevant herein, The Honda Defendants engaged in the business of designing, manufacturing, assembling, marketing, inspecting, testing, and/or selling (directly or through distributors) devices such as the subject vehicle, which is intended to be used as motor vehicle.

87.

The Honda Defendants jointly marketed, tested, inspected, and/or supervised those who did so for the subject vehicle generally. The Honda Defendants collectively have a duty to warn their customers, including Jane Fisher, of any dangerous condition, defect, or safety hazard that they knew or reasonably should have known about including, but not limited to, an occupant classification system that improperly classifies an adult as a child, and therefore fails to deploy an airbag in a necessary and life-saving circumstance such as the crash at issue in this case. This duty to warn extends beyond the sale of the product to the customer and continues to this day.

88.

As the designers, manufacturers, marketers, inspectors, testers, and/or sellers of the subject vehicle and/or its component parts, the Honda Defendants owed a duty of care to Jane Fisher and Theodore DeLucia, and the consuming public in general, to ensure that the Honda Pilots that they design, manufacture, and/or sell are safe and free from defects. The Honda Defendants also had a duty to adequately warn owners and users of Honda Pilots, as well as the consuming public, about dangers of which they were or should have been aware of on the their vehicles.

89.

The Honda Defendants specifically marketed this product (and its components) as both durable and safe for its intended uses. The subject vehicle was designed to have a long usable life and was intended to be used by people like Plaintiff and Mr. DeLucia to do precisely the types of things they was doing at the time of the incident: driving down the road with the expectation that their airbags would deploy in a crash that warrants their deployment, such as the subject crash.

90.

The subject vehicle was both unreasonably dangerous and defective at the time it was designed, fabricated, assembled, manufactured, tested, inspected, marketed, and sold because it was unsafe for its intended and reasonably

foreseeable uses.

91.

Based upon the foregoing, the Honda Defendants were negligent and were the factual cause of the injuries, harm, damages, and losses of Mr. DeLucia in that they designed, tested, manufactured, and marketed an occupant classification system that could cause an adult to be improperly classified as a child, thereby depriving that occupant of a necessary and life-saving airbag, which is an integral safety component of Honda's occupant restraint system.

92.

The tortious conduct of the Honda Defendants was not only negligent but it exhibited a wilful, reckless, and/or wanton disregard for life and property because the Honda Defendants knew that their occupant classification system could cause an adult to be improperly classified as a child, thereby depriving that occupant of a necessary and life-saving airbag, which is an integral safety component of Honda's occupant restraint system. Because of this, the Honda Defendants were required to take special care and precautions that its vehicles, including the subject vehicle, were safe for its intended uses, over a long period of time, where special, unusual, and/or dangerous conditions could exist. Moreover, the Honda Defendants had an affirmative duty to warn its users and customers about potential safety hazards its occupant classification system. This is especially true because incidents such as

this could, and likely would, result in serious injury or death. The Honda

Defendants failed to do any of these things and breached their duties to Plaintiff

and Mr. DeLucia, and their other customers and users in these, and other, respects.

For this and other reasons, the Honda Defendants are liable to Plaintiff for all

damages allowable by law, including those stemming from their negligent design

of the subject vehicle, and punitive damages.

## COUNT II – PUNITIVE DAMAGES
## (ALL DEFENDANTS)

### 93.

Plaintiff incorporates all allegations of fact in all preceding paragraphs as if

fully set forth herein.

### 94.

Defendants, through their conduct in designing, manufacturing, inspecting,

testing, and selling the subject vehicle and its component parts, demonstrated gross

neglect and an entire want of care evidencing a reckless indifference and conscious

disregard to the consequences of their actions, which included an extreme degree

of risk. Plaintiff is entitled to an award of punitive damages to deter Defendants

from such conduct in the future.

### 95.

Despite Defendants' knowledge of the dangerous defects in their 2006

Honda Pilots, Defendants did nothing to remedy or mitigate the problem so that

innocent victims like Mr. DeLucia would not be injured, maimed, or killed.

96.

As a result of Defendants' callous, wanton, and reckless conduct, and their conscious indifference to the safety and well-being of users of their 2006 Honda Pilots, including the subject vehicle, users of their 2006 Honda Pilots, and users of other vehicles that contain the same or substantially similar occupant classification systems, that contain similar defects, and the consuming public in general, numerous victims have been, or will be, injured in similar incidents over time.

97.

There is clear and convincing evidence that Defendants acted with such willful, wanton, conscious, and reckless indifference, which demonstrated an entire wanton of care for property and the safety and well-being of victims like those involved in the Incident and others so as to evidence a conscious indifference to the consequences of its acts, which included an extreme degree of risk. These actions demand and warrant an award of punitive damages against Defendants that will punish them for the harm they have caused and that will deter them from similar future misconduct.

## **PRAYER FOR RELIEF**

98.

Plaintiff prays for the following relief:

(a)    That Plaintiff recover all legally compensable damages that were

inflicted by Defendants including, but not limited to, the full value of

the life of Mr. DeLucia, as viewed through the eyes of Mr. DeLucia;

(b)    That Plaintiff recover damages in an amount sufficient to fully and

fairly compensate the Estate of Mr. DeLucia for his physical and

emotional injuries, his medical bills and funeral expenses, and all of

his general and special damages;

(c)    That punitive damages be awarded against the Honda Defendants in

an amount sufficient to punish them for the harm caused by their

dangerous and defective products, and to deter it from similar future

misconduct;

(d)    That Plaintiff recover pre-judgment and post-judgment interest as

allowed by applicable law;

(e)    That Plaintiff recover her costs of suit;

(f)    That Defendants pay Plaintiff's attorneys' fees;

(g)    That Plaintiff have a trial by jury; and

(h)    For such other and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of July, 2020.

**THE ASHBY FIRM**

_/s/ Drew Ashby_

5447 Roswell Rd.                          Andrew S. Ashby
Atlanta, Georgia 30342              Georgia Bar No. 455020
Main: (404) 777-7771
Fax:   (404) 264-1149
Drew@AshbyFirm.com

## CERTIFICATION

The undersigned counsel hereby certifies that this pleading complies with

the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.).